UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Versacold USA, Inc., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>Inland American Brooklyn Park Atlas, L.L.C., a Delaware liability company; Inland American St. Paul Atlas, L.L.C., a Delaware liability company; Inland American Zumbrota Atlas, L.L.C., a Delaware limited liability company; Inland American New Ulm Atlas, L.L.C., a Delaware limited liability company; Inland American Douglas Atlas, L.L.C., a Delaware limited liability company; Inland American Gainesville Atlas, L.L.C., a Delaware limited liability company; Inland American Pendergrass Atlas, L.L.C., a Delaware limited liability company; Inland American Cartersville Atlas, L.L.C., a Delaware limited liability company; Inland American Belvidere Atlas, L.L.C., a Delaware limited liability company; Inland American Piedmont Atlas, L.L.C., a Delaware limited liability company; Inland American Gaffney Atlas, L.L.C., a Delaware limited liability company,<br><br>Defendants. | Civil Case No. 09-CV-2669 DSD/JJK<br><br>**DECLARATION OF MICHAEL BROADFOOT** |

I, Michael Broadfoot, declare as follows:

1.     I am a Vice President of Inland American HOLDCO Management, LLC, the entity responsible for management of the assets of the sole member of each of the Defendants. I have personal knowledge of the recent discussions with Plaintiff Versacold

USA, Inc. ("Versacold") relating to the default under the leases (the "Leases") that Versacold's predecessors executed for lease of various cold storage facilities from Defendants; the default is as a result of the insolvency of Hf. Eimskipafelag Islands (the "Guarantor") and the Guarantor's entry into Icelandic composition proceedings. Attached as <u>Exhibit 1</u> is a copy of the Guarantor's "Explanatory Memorandum for Creditors in respect of the Petition for Licence to Seek Composition with the Creditors."

2. I am aware of Versacold's attempts to stay the eviction action commenced by Inland American Brooklyn Park Atlas, L.L.C. in Hennepin County District Court as a result of Versacold's default under its Lease for premises in Brooklyn Park, Minnesota. It is my understanding that Versacold claims that the insolvency of the Guarantor and its filing of composition proceedings do not constitute a <u>material</u> breach of the Lease. This allegation is simply not true and is inconsistent with the express provisions of the Leases. Specifically, paragraph 2.1 of the Leases (which are in material respects identical) provides that an Event of Default would occur under the Leases if:

> the Tenant or Guarantor makes an assignment for the benefit of creditors or becomes bankrupt or insolvent or makes an application for relief from Creditors or takes the benefit of any statute for bankrupt or insolvent debtors or makes any proposal or arrangement with creditors (collectively, a "proceeding for relief"), or admits in writing its inability to pay its debts as they come due, or steps are taken for the winding up or other termination of the Tenant's or the Guarantor's existence or the liquidation of the Tenant's or the Guarantor's assets, or either Tenant or Guarantor shall become the subject of any involuntary proceeding for relief which is not dismissed within sixty (60) days of its filing or entry;

3. Despite Versacold's claims to the contrary, the Guarantor's insolvency and entry into composition proceedings has significantly diminished, if not erased, the strength of the Guarantor and the value of its guaranties of the Leases. As a result, Defendants and the thousands of investors in the REIT that is the sole member of

Defendants, are in jeopardy of having Versacold stop making rent payments under the Leases and not having the strength of the Guarantor that Defendants bargained for only two years ago. Having adequate security to assure a rental stream of multiple millions of dollars is vital, and is certainly material.

5. Our concerns about the future of the rental payments under the Leases are not merely hypothetical. According to financial statements it provided to us, Versacold has no tangible net worth, making the financial viability of the Guarantor even more important. It is our belief that the entity that survived the Guarantor's composition proceedings has no assets, just liabilities, and is no longer a suitable guarantor. Despite knowing our concerns, Versacold has refused to provide a suitable replacement guarantor. Versacold's representatives have also told us that the rent under the Leases exceeds market rent. Accordingly, it is likely that in the future, Versacold will ask for rent reductions or simply vacate and stop paying rent. Moreover, 49% of Versacold has been recently purchased by the owner of one of its competitors – The Yucaipa Companies. As a result, a consolidation of Versacold's and Yucaipa's operations, and resulting closure of some facilities, appears in our judgment to be highly likely.

6. The Event of Default under the Leases as a result of the Guarantor's insolvency and entry into composition proceedings has caused Fifth Third Bank, the lender to Defendants on seven of the subject properties, to claim Defendants are in default under their loan documents for those properties.

7. Versacold claims that Defendants somehow waived their rights to claim defaults under the Leases by making a claim in Guarantor's Icelandic composition

proceedings. It is important to note that the claim was made "contingent" pending a future specific financial claim. Nothing about that process waived any default under the Leases. Versacold's argument that Defendants waived the default by accepting rent is equally unavailing. Versacold completely ignores paragraph 11.1 of the Leases which plainly provides that:

> A receipt by Landlord of rent or other payment with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision of this Lease shall be deemed to have been granted unless expressed in writing and signed by Landlord.

8.     It is my belief that Versacold intentionally sought to delay us from filing Inland's eviction action in Hennepin County District Court in hopes of being able to commence their federal court action first.

9.     Specifically, after we informed Versacold that Inland intended to commence an eviction action. In response, Versacold's representatives pleaded for Inland to delay its court filing, telling us that such action could negatively affect Versacold's position with its lenders. In a spirit of compromise, we acceded to their initial demands. Shortly thereafter, Versacold asked for an emergency meeting to discuss a possible resolution. Versacold's representatives even went so far as to schedule a meeting for Thursday, September 24, 2009 at Midway Airport in Chicago. Thereafter, they abruptly canceled the meeting. We tried reaching Versacold's representatives for the remainder of Thursday, the 24th and Friday, the 25th in an effort to discuss a possible resolution. After receiving no response, we authorized our counsel in Minnesota to file the eviction action on Monday, September 28th. As evidence by the file-stamped first

page of the Eviction Complaint attached hereto as <u>Exhibit 2</u>, our eviction action was filed at 10:05 a.m. on September 29th.

10. But for Versacold's claim that they wished to discuss a resolution and its representatives' pleas for more time to have those discussions, we would have filed our eviction action during the week of September 21st.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: October 6, 2009

_____
Michael Broadfoot

4629414-3