```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
```

Versacold USA, Inc., a                Civil No. 09-2669(DSD/JJK)
Minnesota corporation,

        Plaintiff,

v.

Inland American Brooklyn Park
Atlas, L.L.C., a Delaware
limited liability company, et al.,

        Defendants.
--------------------------------------

Versacold USA, Inc.,                  Civil No. 09-2857(DSD/JJK)

        Plaintiff,

v.

Inland American Brooklyn
Park Atlas, L.L.C.,

        Defendant.

    Marc A. Al, Esq., Christopher N. Weiss, Esq., Darcie C.
    Durr, Esq., Troy J. Hutchinson, Esq. and Stoel Rives LLP,
    33 South Sixth Street, Suite 4200, Minneapolis, MN 55402,
    counsel for plaintiff.

    Joseph J. Cassioppi, Esq. Mark W. Vyvyan, Esq. and
    Fredrikson & Byron, 200 South Sixth Street, Suite 4000,
    Minneapolis, MN 55402 and Lauren M. Loew, Esq., William
    J. McKenna, Jr., Esq. and Foley & Lardner, LLP, 321 North
    Clark Street, Suite 2800, Chicago, IL 60654-5313, counsel
    for defendants.

This matter is before the court upon the motions for partial summary judgment and summary judgment by defendants. Based on a review of the file, record and proceedings herein, the court denies the motions.

**BACKGROUND**

This commercial landlord-tenant dispute arises out of transactions for the sale and leaseback of temperature-controlled warehouses (the Leases), between plaintiff Versacold USA, Inc. (Versacold), defendants, Inland American Brooklyn Park Atlas, L.L.C. (Inland Brooklyn Park), Inland American St. Paul Atlas, L.L.C., Inland American Zumbrota Atlas, L.L.C., Inland American New Ulm Atlas, L.L.C., Inland American Douglas Atlas, L.L.C., Inland American Gainesville Atlas, L.L.C., Inland American Pendergrass Atlas, L.L.C., Inland American Cartersville Atlas, L.L.C., Inland American Belvidere Atlas, L.L.C., Inland American Piedmont Atlas, L.L.C., and Inland American Gaffney Atlas, L.L.C. (collectively the Inland Entities) and nonparty *Hf*. Eimskipfelag Islands (Eimskip), the parent of Versaold and guarantor of the Leases. Versacold[1] provides refrigerated and dry warehousing, transportation and logistical services. Each Inland Entity[2] owns a single warehouse, located in either in Minnesota, Georgia, Illinois or South Carolina.

---

[1] Versacold is a Minnesota corporation with its principal place of business in Vancouver, British Columbia.

[2] Each defendant is a limited-liability company whose sole member is Inland American Real Estate Trust, Inc. (IREA), a Maryland corporation with its principal place of business in Illinois.

In 2006, Eimskip acquired Atlas Cold Storage USA, Inc. and Atlas Cold Storage America LLC (collectively Atlas).[3] Shortly thereafter, Eimskip retained nonparties RBC Capital Markets (RBC) and CB Richard Ellis (CBRE) to market a sale-leaseback transaction for Atlas's temperature-controlled warehouses, including the eleven relevant to this action. RBC and CBRE estimated the value of the eleven properties at $150,134,000 if guaranteed by Eimskip or $133,822,000 if not guaranteed. See Vyvyan Decl. Ex. B, at 12909, ECF No. 103-2.[4] In July 2007, RBC and CBRE presented a portfolio of Atlas warehouses to prospective purchasers, including IREA. See Consenza Decl. ¶ 6, ECF No. 107; id. Ex. A, at 10.

On August 8, 2007, Atlas and IREA entered into an agreement for the sale and leaseback of eleven Atlas facilities. According to the Inland Entities, in early August, IREA and Atlas represented that Eimskip had a net worth of around $600 million. Id. ¶ 8. On August 15, 2007, Joseph Cosenza, who at the time was the vice-chairman of IREA, sent an email announcing that Eimskip had completed the purchase of Versacold for $1.180 billion. On September 20, 2007, IREA requested Eimskip's financial statements. In response, Atlas sent IREA a copy of Eimskip's 2006 financial

---

[3] Versacold became the successor-in-name to Atlas Cold Storage USA, Inc. and the successor-by-merger to Atlas Cold Storage America LLC after Eimskip acquired Versacold in August 2007.

[4] Unless otherwise noted, all citations to the record refer to case number 09-2669.

3

statements and directed IREA to Eimskip's website, where its interim third-quarter financial statements were posted. See Al Decl. Ex. 9, ECF No. 124-24. The interim report covers the period from November 1, 2006 to July 31, 2007, and shows a total equity of over € 568 million on July 31, 2007. See Cosenza Decl. Ex. C, at 3, ECF No. 107-8; Hauksson Decl. Ex. 1, at 6, ECF No. 117-1. The report also notes in "Subsequent Events" that the Versacold acquisition would be effective on August 1, 2007, and result in a net cash outflow of nearly € 810 million. See Hauksson Decl. Ex. 1, at 12; see also id. Ex. 2, at 13 (April 30, 2007, financial statements noting purchase offer by Eimskip to Versacold).

On September 28, 2007, each newly created Inland Entity entered into a sale-leaseback agreement with Versacold as the tenant and Eimskip as the guarantor. Thereafter, Versacold timely made payments under the Leases.

The Leases define "Event of Default" as the occurrence of any one of:

> (a) the Tenant fails to make any payment of Rent when due and such default continues for five (5) Business Days after Notice of default that such payment was due;
>
> (b) the Tenant fails to observe or perform any obligation of the Tenant pursuant to this Lease other than the payment of any Rent, and such default continues for thirty (30) days after Notice thereof to the Tenant; provided however that the Tenant shall be permitted such longer period of time as may reasonably be required in the circumstances if the

4

default could not reasonably be remedied within thirty (30) days after Notice and provided the Tenant has commenced to remedy such default within such thirty (30) day period and proceeds thereafter diligently and continuously to remedy such default;

(c) any of the Landlord's insurance policies on the Premises are (i) are not maintained or (ii) actually or threatened to be cancelled or adversely changed, in each case as a result of any use of or articles on or about the Premises and the Landlord has given five (5) Business Days prior Notice to the Tenant thereof and the Tenant has not cured such breach or obtained similar insurance coverage in replacement thereof during such five (5) Business Day cure period;

(d) the Tenant shall make a Transfer affecting the Premises, or the Premises shall be used by any person or for any purpose, other than in compliance with this Lease (although no Event of Default shall be deemed to exist with regard to a Transfer involving a sublease, licensing arrangement or sharing of possession with a third party until thirty (30) days after Notice thereof to the Tenant);

(e) the Tenant or the Guarantor makes an assignment for the benefit of creditors or becomes bankrupt or insolvent or makes an application for relief from Creditors or takes the benefit of any statute for bankrupt or insolvent debtors or makes any proposal or arrangement with creditors (collectively, a "proceeding for relief"), or admits in writing its inability to pay its debts as they come due, or steps are taken for the winding up or other termination of the Tenant's or the Guarantor's existence or the liquidation of the Tenant's or the Guarantor's assets, or either Tenant or Guarantor shall become the subject of any

> involuntary proceeding for relief which is not dismissed within sixty (60) days of its filing or entry;
>
> (f) a trustee, receiver, receiver-manager, or similar person is appointed in respect of the assets or business of the Tenant or the Guarantor;
>
> (g) this Lease or any other property of the Tenant at or on the Premises is at any time seized or taken in an execution which remains unsatisfied for a period of thirty (30) days or more; or
>
> (h) an "Event of Default," which is not timely cured by Tenant or caused to be cured by Tenant (or by an AffJ1iate of Tenant if such Affiliate is the tenant under the applicable lease), occurs under any lease of [the other properties at issue in this case] during such time as (i) the landlord under such lease is the landlord under this Lease and (ii) the Tenant, such Affiliate, and/or the Guarantor under this Lease is/are bound by the terms of such other lease.

Compl. Exs. 1–11, art. 2.1. The Leases further provide, "[u]pon occurrence of an Event of Default and so long as such Event of Default shall be continuing, Landlord may at any time thereafter at its election ... (b) terminate the Tenant's right of possession ...." Id. art. 11.1.

A guaranty by Eimskip accompanies each Lease. See id. sched. E. Eimskip guarantees all payments due under each Lease and the performance of all obligations if Versacold defaults. Id.

Further, Eimskip "acknowledges that Landlord would not enter into the Lease unless this Guaranty accompanied the execution and delivery of the Lease."  Id.

The events that the Inland Entities claim give rise to a right to evict Versacold began in October 2008.  At that time, Eimskip signed "formal debt freezing agreements with several key creditors" to avoid insolvency.  See Jónsson Decl. Ex. B, ECF No. 104-2.  On July 1, 2009, Eimskip petitioned for authorization to seek composition under the Icelandic Act on Bankruptcy, etc., lög um gjaldþrotaskipti o.fl. nr. 21/1991 [Act on Bankruptcy, etc.].  See id.  A composition is an "agreement on settlement or relinquishment of debts concluded between an debtor and a certain majority of [its] creditors" confirmed by the district court.  See Ólafsdóttir Decl. ¶ 10, ECF No. 116; Act on Bankruptcy, etc., art. 27.  In its petition, Eimskip stated that its "creditors have not received payment on their claims, neither principal nor interest, since October 2008."  Jónsson Decl. Ex. B ¶ 3.  Eimskip further stated that "it [was] highly indebted" and that its dividends were not sufficient for it to "fulfill[] its obligations completely."  Id.  It noted, "[b]ut for [the debt-freezing] arrangements, Eimskip would be unable to meet its debts as they fall due and would need to file for liquidation."  Id. Ex. C § 3.

Following approval of the composition agreement by all of the creditors eligible to vote,[5] the District Court of Reykjavík approved the agreement on August 28, 2009.[6] At the time this action began, Eimskip's assets exceeded its liabilities and it met its debts as they come due. See Valgarðsson Decl. ¶ 8, ECF No. 119; id. Ex. 1. Versacold has timely made all lease payments since the inception of the leases.

The instant action began on September 29, 2009, with the nearly simultaneous filing of an eviction action by Inland Brooklyn Park and a declaratory judgment action by Versacold. The court previously detailed the history of the cases that constitute this action, see ECF No. 43, and the court now only summarizes the claims presently involved. Versacold seeks a declaration that no event of default has occurred, that the Inland Entities waived and forfeited the alleged breach; that the alleged breach was not material, that the Inland Entities violated their contractual duty to act reasonably and the implied duties of good faith and fair dealing and that an attempt to evict Versacold would constitute a material breach of the Brooklyn Park lease. See Compl. ¶¶ 29-30, ECF No. 1-1 (09-cv-2857); Compl. ¶¶ 87-88, ECF No. 1 (09-cv-2669). Versacold further claims breach of contract and interference with

---

[5] The Inland Entities' contingent claims were not eligible to vote. See Act on Bankruptcy, etc., art. 33.

[6] Following composition, Eimskip was renamed A1988 hf. The court refers to the entity as Eimskip to avoid confusion.

economic advantage against Inland Brooklyn Park.  See Compl. ¶¶ 31–36, 38–41, ECF No. 1-1 (09-cv-2857).  The Inland Entities seek a declaration that an event of default has occurred and that it is entitled to pursue remedies including eviction under the Leases.  See Countercl. ¶¶ 12–15, ECF No. 30 (09-cv-2857); Am. Countercl. ¶ 55, ECF No. 88 (09-cv-2669).  The Inland Entities also claim that Versacold and defendant Aaron Ames[7] fraudulently omitted and concealed Eimskip's financial condition in 2007.  See Am. Counterclaim ¶¶ 56–65, ECF No. 88 (09-cv-2669).

On October 29, 2009, the court granted in part Versacold's motion for a preliminary injunction enjoining the Inland Entities — other than Inland Brooklyn Park — from commencing actions to terminate Versacold's possession of the warehouses.  The Inland Entities now move for partial summary judgment on their declaratory judgment claims and for summary judgment on Versacold's declaratory judgment claims.  Inland Brooklyn Park also moves for summary judgment on Versacold's breach of contract and interference with prospective economic advantage claims.  The court now considers the motions.

---

[7] The parties dismissed Aaron Ames from this action by stipulation on October 20, 2010.

9

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**I. Event of Default**

The Leases define several "events of default," including the insolvency of the guarantor and "any proposal or arrangement with

creditors" or "admi[ssion] in writing [of an] inability to pay its debts as they come due" by the guarantor. See Compl. Exs. 1–11, art. 2.1(e). The Inland Entities argue that an event of default occurred due to Eimskip's composition proceeding. The Inland Entities further argue that Eimskip admitted that it was insolvent and that it admitted in writing that it could not meet its debts as they came due. Versacold responds that under Icelandic and United States law, Eimskip's entry into composition cannot be an event of default and that Eimskip never admitted it was insolvent or that it could not meet debts as they came due.

The composition proceeding qualifies as an event of default under the Leases. Article 27 of the Act on Bankruptcy, etc. defines composition as "an agreement on settlement or relinquishment of debts concluded between a debtor and a certain majority of his creditors." Jónsson Decl. Ex. D, ECF No. 109. Eimskip entered into composition in July 2009, and its creditors and the district court of Reykjavík approved the composition agreement. Under the plain terms of the Leases, this is an event of default. Versacold argues, however, that even if the composition qualifies as a default under the Leases, Icelandic and United States law bars reliance on the composition to trigger an event of default.

Versacold first argues that the composition was not an event of default because the Inland Entities' claims against Versacold

derive from Eimskip's composition, which is governed by Icelandic law.  Under the Act on Bankruptcy, etc., once a court confirms a composition agreement, it "shall be binding upon the creditors and their successors and assigns as regards their composition claims.  The settlement of claim[s] in accordance with the agreement shall have the same effect as performance of the original obligation."  Act on Bankruptcy, etc. art. 60.  The Inland Entities are not seeking to enforce Eimskip's obligations, however.  Rather, the Inland Entities assert that the mere entry into composition is an event of default under the Leases.  As a result, the Act on Bankruptcy, etc. has no effect on the present claims, and, therefore, does not bar application of the plain language of the Leases.

Versacold next argues that United States bankruptcy law and policy, as expressed in 11 U.S.C. § 365(e)(1), also prevent the composition from being an event of default.  The court may declare void lease provisions that violate public policy.  See Katun Corp. v. Clarke, 484 F.3d 972, 976 (8th Cir. 2007).

The power of the court to declare a contract provision void, however, "is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."  Hart v. Bell, 222 Minn. 69, 76, 23 N.W.2d 375, 379 (Minn. 1946) (citation omitted).  "It is not the province of courts to emasculate the liberty of contract by

12

enabling parties to escape their contractual obligations on the pretext of public policy unless the preservation of the public welfare imperatively so demands." Id. at 378.

Section 365(e)(1) prevents enforcement of an ipso facto provision of a lease: a creditor may not terminate or modify the rights of a lessee solely based on a provision that is conditioned on the financial condition or insolvency of the lessee. 11 U.S.C. § 365(e)(1). Versacold argues that article 2.1(e) of the Leases is exactly the kind of ipso facto clause that violates federal public policy. The Inland Entities respond that § 365(e) does not apply to the instant action because it is not a United States bankruptcy proceeding, nor was Eimskip involved in a bankruptcy under § 365(e).

The court need not exercise its power to declare article 2.1(e) void as against public policy. Article 2.1(e) does not automatically give rise to a right to terminate the Leases or Versacold's possession, because article 11.1 of the Leases only allows termination while an event of default is continuing. Here, Eimskip had completed composition and had assets in excess of its debts when this action began. As a result, the public welfare does not imperatively demand that the court declare article 2.1(e) void. Therefore, the court finds that the composition proceeding was an event of default and proceeds to examine whether the proposed eviction is allowed under article 11.1 of the Leases.

## II. Continuing Event of Default

Leases are contracts. Minneapolis Pub. Hous. Auth. v. Lor, 591 N.W.2d 700, 704 (Minn. 1999). "The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997).[8] A contract must be interpreted in a way that gives all of its provisions meaning. Current Tech. Concepts, Inc. v. Irie Enters., Inc., 530 N.W.2d 539, 543 (Minn. 1995). Construction of an unambiguous contract is a legal question for the court, while construction of an ambiguous contract presents factual questions for the jury. See Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003) (citation omitted). Whether a contract is ambiguous is a question

---

[8] The leases are respectively governed by the law of Georgia, Illinois, Minnesota and South Carolina. See Compl. Exs. 1-11, arts. 2.1, 15.7 (stating lease "shall be governed by and interpreted in accordance with the laws of the with the laws of the [state in which the warehouse is located]."). The law of contract interpretation of Georgia, Illinois and South Carolina is materially the same as the law of Minnesota. See McGill v. Moore, 672 S.E.2d 571, 573-74 (S.C. 2009); Deep Six, Inc. v. Abernathy, 538 S.E.2d 886, 887-88 (Ga. Ct. App. 2000) (citing Ga. Code Ann. §§ 13-2-1 to 13-2-3); Omnitrus Merging Corp. v. Ill. Tool Works, Inc., 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993). Therefore, the court only cites Minnesota law.

of law for a court to decide. Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979) (citations omitted).

Article 11.1 of the Leases allows the Inland Entities to terminate the Leases or Versacold's possession of the facilities "upon each occurrence of an Event of Default and so long as such Event of Default shall be continuing." The Inland Entities argue that the "continuing" requirement does not apply to insolvency, composition, or admission of inability to pay debts because these events do not have a defined grace period, unlike most events of default defined in article 2.1. Specifically, the Inland Entities argue that once Eimskip entered into the composition proceeding, "it could not be undone."[9]

The Inland Entities' interpretation, however, is contrary to the plain, unambiguous language of the Leases. As noted previously by the court, article 11.1 does not qualify the requirement that

---

[9] The cases cited by the Inland Entities are inapposite. In an unpublished case, the Minnesota Court of Appeals construed provisions similar to articles 2.1 and 11.1 in the instant case. See Winthrop Res. Corp. v. Cambridge Research Assocs., Inc., No A03-400, 2003 WL 22846113, at *5 (Minn. Ct. App. Dec. 2, 2003). Unlike here, however, in Winthrop, the provision at issue had a specific grace period, and the lessee had not made payment during that period. Id. The court held that it must read the lease in a way that "gives all of its provisions meaning." Id. In another unpublished case, Munro v. Swanson, Nos. 55811-1-I & 56082-4-I, 2007 WL 512533, at *5–8 (Wash. Ct. App. Feb. 20, 2007), the court considered whether a notice-and-cure provision applied to certain listed events of default, not whether an event need be continuing in order for the landlord to seek remedies. Id.

15

the event of default be continuing. See Order 10-11, ECF No. 43. The existence of grace periods for some, but not all events of default does not indicate the intent of the parties to limit article 11.1 to a subset of article 2.1. Further, article 11.1 becomes superfluous if it only applies to those provisions of article 2.1 that specify a grace period. Lastly, even if the court found the Leases to be ambiguous, the long-standing principle that forfeitures are disfavored would preclude adoption of the Inland Entities' interpretation in this case. See Phila., Wilmington & Balt. R.R. Co. v. Howard, 54 U.S. (13 How.) 307, 340, 307, (1852) ("The law leans strongly against forfeiture ...."); Cloverdale, 580 N.W.2d at 49; accord Lippo v. Mobil Oil Corp., 776 F.2d 706, 715 (7th Cir. 1985) ("[I]f there were two possible constructions [of a contract], only one of which will work forfeiture, the construction may be adopted that will avoid the forfeiture and preserve the rights of the parties."). Therefore, the court determines that the Leases do not allow the Inland Entities to terminate Versacold's possession or the Leases unless the "event of default" is continuing.

No genuine issue of fact exists about whether an event of default is continuing. Eimskip exited composition on August 28, 2009. Moreover, the Inland Entities offer no evidence contrary to Versacold's sworn declaration that Eimskip continues to meet its debts as they come due and that it was solvent at the time the

16

Inland Entities initiated this action. See Valgarðsson Decl. ¶ 8; id. Ex. 1. Accordingly, the Inland Entities' arguments fail: the Leases do not allow the Inland Entities to terminate Versacold's possession or the Leases, and summary judgment in their favor is not warranted.[10]

**III. Materiality**

Even if the court did not find the Inland Entities barred from seeking eviction or termination by article 11.1 of the Leases, the Inland Entities are not entitled to summary judgment because issues of fact remain as to whether the composition proceeding of Eimskip or its financial condition are material. A breach of a lease justifies termination only when the breach is material. See Cloverdale Foods of Minn., Inc. v. Pioneer Snacks, 580 N.W.2d 46, 49 (Minn. Ct. App. 1998).[11] A breach is material when it violates a primary purpose of a lease. Cf. Steller v. Thomas, 45 N.W.2d

---

[10] As a result, the court denies the request of the Inland Entities to lift the October 29, 2009, preliminary injunction.

[11] See also Brazell v. Windsor, 384 S.C. 512, 682 S.E.2d 824, 826 (S.C. 2009) ("A breach of contract claim warranting rescission of the contract must be so substantial and fundamental as to defeat the purpose of the contract."); LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc., 477 F. Supp. 2d 932, 942 (N.D.Ill. 2007) ("In Illinois, a purely technical and immaterial breach of a contractual obligation will generally be insufficient to warrant contract rescission." (citation omitted)); Mayor & City of Douglasville v. Hildebrand, 333 S.E.2d 674, 676 (Ga. Ct. App. 1985) ("A breach which is incidental and subordinate to the main purpose of the contract, and which may be compensated in damages, does not warrant a rescission or termination." (internal quotation marks and citations omitted)).

17

537, 542–44 (Minn. 1950). The materiality of a breach is a question of fact. Cloverdale Foods, at 49–50.

The Inland Entities argue that the primary purpose of the leases was payment of $200 million in rent as recovery and profit for its $170,500,000 investment in the facilities. In support, the Inland Entities point to the guaranties, which state, "Guarantor acknowledges that Landlord would not enter into the Lease unless this Guaranty accompanied the execution and delivery of the lease." See Compl. Exs. 1–11. Further, the Inland Entities argue that the marketing materials noted the "Strong Indemnification" of Eimskip, and that without Eimskip's purported $500 million net worth, "the Inland Entities would not have purchased the facilities, much less entered into the Leases." See Cosenza Decl. ¶ 13. Versacold responds that the financial condition of Eimskip does not affect the essence of the leases, which it agrees, from Inland's perspective, is the receipt of $200 million in rent.

As an initial matter, just as a party may not defeat summary judgment based on self-serving affidavits, the Inland Entities may not rely solely on Cosenza's declaration to establish the absence of a genuine issue of material fact. Cf. Conolly v. Clark, 457 F.3d. 872, 876 (8th Cir. 2006). Here, the Inland Entities also offer the guaranty-of-lease documents, which state that the Inland

Entities would not have entered into the Leases without the guaranty. Together, this evidence is sufficient to suggest that the existence of a guaranty was material to the Inland Entities.

Such evidence is not probative, however, of whether the particular financial condition of the guarantor was material to the Inland Entities. Versacold has offered evidence, including the September 20, 2007, email exchange, which from which a reasonable jury could conclude that IREA's due diligence investigation does not support its contention about the financial condition of Eimskip. Moreover, even if a genuine issue of material fact did not exist as to whether the financial condition of Eimskip affects the primary Lease purpose of receipt of rent from Versacold, Versacold has introduced evidence that Eimskip was solvent at the time the Inland Entities sought eviction. See Valgarðsson Decl. ¶ 8; id. Ex. 1. The Inland Entities offer no evidence that they required a particular financial position of Eimskip, much less what that position was. Therefore, summary judgment is also not warranted because genuine issues of material fact remain regarding whether Eimskip's composition and financial condition is a material breach of the Leases.

**IV. Counterclaims of Versacold**

Inland Brooklyn Park seeks summary judgment on the breach of contract and interference with prospective economic advantage counterclaims of Versacold. Inland Brooklyn Park argues that both

19

counterclaims are premised on what Versacold calls "unjustified threats of eviction and its institution of an eviction action." Defs.' Mem. Supp. 38, ECF No. 102 (quoting Compl. ¶ 32, ECF No. 1-1 (09-cv-2857)). Inland Brooklyn Park further argues that Versacold cannot maintain its claims as a matter of law because the composition proceeding of Eimskip is a material breach. The court has already determined, however, that a genuine issue of material fact remains as to whether Eimskip's composition and financial condition are material to the Lease and that the requirement that the event of default be continuing does not allow Inland Brooklyn Park to pursue eviction. Accordingly, summary judgment in favor of Inland Brooklyn Park is not warranted on the counterclaims.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for partial summary judgment by the Inland Entities [Doc. No. 100] and the motion for summary judgment by Inland Brooklyn Park [Doc. No. 61] are denied.

Dated: November 2, 2010

                                                   s/David S. Doty
                                                   David S. Doty, Judge
                                                   United States District Court